# 23-1340

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

NESSA RISLEY, individually and on behalf of all others similarly situated, JAMES FREELAND, ROBERT SCOTT, ANNIE VENESKY, ANDREW CARDIS, DEAN MEYERS,

—against—

*Lead-Plaintiffs-Appellants,*

UNIVERSAL NAVIGATION INC., DBA UNISWAP LABS, HAYDEN Z. ADAMS, PARADIGM OPERATIONS LP, AH CAPITAL MANAGEMENT, L.L.C., DBA ANDREESSEN HOROWITZ, UNION SQUARE VENTURES, LLC, UNISWAP FOUNDATION,

*Defendants-Appellees.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## OMNIBUS BRIEF IN REPLY FOR LEAD-PLAINTIFFS-APPELLANTS

JAMES R. SERRITELLA
KIM & SERRITELLA, LLP
110 West 40th Street, 10th Floor
New York, New York 10018
(212) 951-1230

*Attorneys for Plaintiffs-Appellants*
*Nessa Risley, individually and*
*on behalf of all others similarly*
*situated, James Freeland, Robert*
*Scott, Annie Venesky, Andrew*
*Cardis, and Dean Meyers*

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ....................................................................1

ARGUMENT ...........................................................................................3

I.   Appellants Sufficiently Allege a Claim Under Section 29(b) of the Exchange Act..............................................................................3

    A. Appellees Do Not Deny That the Tokens are Securities or that Uniswap is an Unregistered Exchange ...............................3

    B. Given that Uniswap is an Unregistered Exchange, Broker, and/or Dealer in Securities, Contracts for the Sale of Securities Exchanged on Uniswap are *Per Se* Illegal and Voidable at the Buyer's Option ...4

    C. Appellees' Arguments as to Contractual Privity are Improperly Factual or Unsupported by Case Law (or Both).................................7

II. Appellants Sufficiently Allege a Cause of Action Under Section 12(a)(1) of the Securities Act ...................................................................12

    A. Factual Arguments as to Whether Uniswap Held and Passed Title to the Tokens are Inappropriate ...........................................12

    B. Appellees' Attempts to Differentiate *Coinbase* Ignore the Pleadings and Reality ...............................................................13

    C. Appellants, at the Very Least, Directly Solicited Trades for UNI and the Liquidity Tokens .........................................................15

III. Should This Court Choose Not to Remand the Issue, the FAC Adequately Pleaded Control Person Liability Against the VC Appellees .................17

IV. The State Law Claims were Wrongly Dismissed and Should Be Remanded ..............................................................................20

V.  The Claims Against UF Should Not Be Dismissed ................................22

CONCLUSION ........................................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beason v. United Techs. Corp.*,
    337 F.3d 271 (2d Cir. 2003) ...............................................................17, 20, 22

*EMA Fin. v. Vystar Corp.*,
    2020 U.S. Dist. LEXIS 252367 (S.D.N.Y. Mar. 29, 2020).................................6

*Forest Park Pictures v. Universal Television Network, Inc.*,
    683 F.3d 424 (2d Cir. 2012) ...........................................................................23

*Garcia v. Vill. Red Rest. Corp.*,
    2017 U.S. Dist. LEXIS 69965 (S.D.N.Y. May 8, 2017) ...................................23

*Lowen v. Tower Asset Mgmt., Inc.*,
    829 F.2d 1209 (2d Cir. 1987) .........................................................................24

*Meyers v. Lott*,
    133 Idaho 846 (2000).......................................................................................21

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970).........................................................................................5

*Monarch Long Beach Corp. v. Soft Drink Workers, Loc. 812*,
    762 F.2d 228 (2d Cir. 1985) ...........................................................................22

*Network Enters. v. APBA Offshore Prods.*,
    2002 U.S. Dist. LEXIS 17256 (S.D.N.Y. Sep. 10, 2002) .................................25

*NexPoint Diversified Real Est. Trust v. ACIS Capital Mgmt., L.P.*,
    80 F.4th 413 (2d Cir. 2023) ..............................................................................5

*Oberlander v. Coinbase Global Inc.*
    2024 U.S. App. LEXIS 8200 (2d Cir. Apr. 5, 2024).................................*passim*

*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*,
    170 F.R.D. 361 (S.D.N.Y. 1997) ....................................................................25

*Omega Overseas, Ltd. v. Griffith*,
    2014 U.S. Dist. LEXIS 109781 (S.D.N.Y. Aug. 7, 2014).................................5

*In re Philip Services Corp. Securities Litigation*,
   383 F. Supp. 2d 463 (S.D.N.Y. 2004) ................................................................18

*Piazza v. Kirkbride*,
   785 S.E.2d 695 (N.C. Ct. App. 2016)................................................................21

*Pinter v. Dahl*,
   486 U.S. 622 (1988).........................................................................*passim*

*In re Platinum & Palladium Antitrust Litig.*,
   61 F.4th 242 (2d Cir. 2023) ................................................................22

*Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*,
   794 F. Supp. 1265 (S.D.N.Y. 1992) ....................................................6

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989) ................................................................23

*Schonfeld v. Hilliard*,
   218 F.3d 164 (2d Cir. 2000) ............................................................17, 20, 22

*Sykes v. Mel Harris & Assocs., LLC*,
   757 F. Supp. 2d 413 (S.D.N.Y. 2010) ................................................23

*Van Loon v. Dep't of Treasury*,
   2023 U.S. Dist. LEXIS 144035 (W.D. Tex. Aug. 17, 2023)............................8, 9

*In re Veon Ltd. Securities Litigation*,
   2018 U.S. Dist. LEXIS 148272 (S.D.N.Y. Aug. 30, 2018)..........................18, 19

*Wall v. CSX Transp., Inc.*,
   471 F.3d 410 (2d Cir. 2006) ................................................................23

*William Wrigley Jr. Co. v. Waters*,
   890 F.2d 594 (2d Cir. 1989) ........................................................24, 25

*Williams v. Binance*,
   96 F.4th 129 (2d Cir. 2023) ................................................................3, 10, 11

*Williamson v. Recovery L.P.*,
   542 F.3d 43 (2d Cir. 2008) ................................................................24

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*,
   933 F.2d 131 (2d Cir. 1991) ...............................................................25

**Statutes**

Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ..............................2, 20

Investment Advisers Act of 1940, 15 U.S.C. §80b-1 *et seq.*....................................5

Securities Act of 1933, 15 U.S.C. § 77a *et seq.*..................................................*passim*

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*..............................*passim*

**PRELIMINARY STATEMENT**

Lead Plaintiffs-Appellants Nessa Risley, James Freeland, Robert Scott, Annie Venesky, Andrew Cardis, and Dean Meyers, individually and on behalf of all others similarly situated ("Appellants"), submit this omnibus in reply to the briefs in opposition submitted by Defendants-Appellees Universal Navigation Inc. dba Uniswap Labs (the "Company"), Hayden Z. Adams ("Adams"), Paradigm Operations LP, ("Paradigm") AH Capital Management, L.L.C. dba Andreessen Horowitz ("Andreessen"), Union Square Ventures, LLC ("USV"; together with Paradigm and Andreessen the "VC Appellees"); and the Uniswap Foundation's ("UF"; together with the Company, Adams, and the VC Appellees "Appellees"), and in further support of their appeal from the August 29, 2023 Opinion and Order (Dkt. No. 90, SPA-1-51) (the "Order") of the Hon. Katherine Polk Failla, U.S. District Judge for the Southern District of New York (the "District Court"), granting motions to dismiss Plaintiffs' First Amended Complaint (the "FAC", A-18-188).

In their main brief, Appellants set forth how Appellees broker and sell unregistered securities in the form of cryptocurrency tokens on an unregistered exchange (the Uniswap Exchange; together with the Uniswap Interface and Uniswap Protocol,[1] "Uniswap"), in violation of both the Securities Act of 1933 (the

---

[1] "Uniswap Interface" and "Uniswap Protocol" shall have the same meaning as in Appellants' main brief of "Interface" and "Protocol," respectively.

"Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"), as well as analogous state securities laws. Appellants also noted how the Order incorrectly dismissed these and other state law claims by declining supplemental jurisdiction over them, when the District Court in fact had original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).

In their various oppositions, Appellees do not argue that the traded tokens are not securities, nor do they deny (as indeed they cannot) that Uniswap is an unregistered exchange and the tokens sold on its platform are unregistered securities. Instead, they assert with scant evidence or authority that Uniswap cannot have been in contractual privity with any user, that Uniswap did not at any point hold or pass title to any of the tokens transacted thereon, and that none of the Appellees ever solicited the purchase of any tokens sold on Uniswap. Appellees further argue that this Court should decide numerous issues which were not considered by the District Court, including the state law claims that Appellees concede were wrongly dismissed by the District Court as well as control person liability and alter-ego theories.

In doing so, Appellees completely disregard tokens which they created, issued, and sold on Uniswap, including UNI and liquidity tokens, as well as the general operation and functionality of Uniswap and how every transaction thereon

is able to occur. Appellees also largely disregard two recent decisions by this Court upholding similar allegations against the Coinbase and Binance cryptocurrency exchanges. *See Oberlander v. Coinbase Global Inc.* 2024 U.S. App. LEXIS 8200 (2d Cir. Apr. 5, 2024); *Williams v. Binance*, 96 F.4th 129 (2d Cir. 2023).

But more fundamentally, Appellees seek to hide behind technology and assert that their token market is somehow different from the securities exchanges the law has regulated for nearly 100 years. Uniswap is an unregistered exchange. Unregistered securities are being traded on it. Appellees are selling unregistered securities. And unprotected customers are being defrauded. None of this is new or revolutionary. The Order must be reversed.

## ARGUMENT

### I. Appellants Sufficiently Allege a Claim Under Section 29(b) of the Exchange Act

#### A. Appellees Do Not Deny That the Tokens are Securities or that Uniswap is an Unregistered Exchange

As an initial matter, Appellees functionally conceded for the purposes of both their original motion and this appeal that the tokens traded on Uniswap are securities and that Uniswap is an exchange, broker, or dealer as those terms are defined under the Exchange Act and Securities Act.[2] Appellees also do not (and indeed cannot)

---

[2] Adams and the Company assert that they "dispute" that the tokens are securities and Uniswap is a broker, dealer, or exchange, but do not offer any argument on the

dispute that Uniswap is not registered as a broker, dealer, or national securities exchange as required under the relevant provisions of the Exchange Act. That this appeal opens from a position of Appellees owning, operating, and controlling what they functionally concede is an unregistered securities exchange is highly probative of the quality of Appellees' remaining arguments.

### B. Given that Uniswap is an Unregistered Exchange, Broker, and/or Dealer in Securities, Contracts for the Sale of Securities Exchanged on Uniswap are *Per Se* Illegal and Voidable at the Buyer's Option

Having completely failed to address the allegations of the illegality of their conduct, Appellees next argue that Appellants' Section 29(b) claims fail because Appellants do not "demonstrate the existence of a contract that *requires* an illegal act in violation of the Exchange Act." Company Brief at 27 (emphasis in original).

Pursuant to Section 78e of the Exchange Act, it is <u>unlawful</u> for any broker, dealer, or exchange to effect any transaction in a security "<u>unless such exchange is registered as [a] national securities exchange</u>" under the Act. In other words, any security transaction made on an unregistered exchange or through an unregistered broker or dealer is <u>illegal</u> and therefore voidable by the innocent party as a matter of law.

This fundamental point is not disproven but in fact underscored by the case

---

point or ask the Court to address those issues. Company Brief at 20 n.4. The remaining Appellees do not address the issue at all.

law cited by Appellants. Indeed, in interpreting similar provisions of the Investment Advisers Act of 1940, the Second Circuit in *NexPoint* clearly distinguished how conduct by unregistered brokers fell afoul of the relevant statute:

> The decisions in EdgePoint and Regional Properties involved similar factual situations. In each, a party was contractually required to solicit securities sales on behalf of others -- *conduct that is **completely lawful when performed by a broker registered with the SEC***. Accordingly, the contracts were not facially illegal. However, **the brokers in those cases were not registered with the SEC, and therefore doing what the contracts demanded of them** – "market[ing] . . . limited partnership interests" and "attempt[ing] to sell 'all or part of the Company'" – **required a violation of the Exchange Act**. In other words, the terms of those contracts required a party to engage in conduct that was unlawful in light of the circumstances presented; the source of that unlawfulness (**the brokers' failure to register with the SEC**) was simply extrinsic to the contracts.

*NexPoint Diversified Real Est. Trust v. ACIS Capital Mgmt., L.P.*, 80 F.4th 413, 421-22 (2d Cir. 2023) (internal citations omitted; emphasis added); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 387-88 (1970) (holding that a contract in violation of Section 29(b) is not a "nullity" but is "voidable at the option of the innocent party"); *Omega Overseas, Ltd. v. Griffith*, 2014 U.S. Dist. LEXIS 109781 at *12-15 (S.D.N.Y. Aug. 7, 2014) (collecting cases). Accordingly, the contracts concerning token transactions on Uniswap are voidable at Appellants' option because any securities transaction on Uniswap is *per se* a violation of the securities laws.

Nothing in the limited case law cited by Appellees suggests otherwise. In *Pompano*, the court expressly noted that there was no underlying violation of the

securities laws, whereas here the FAC alleges (and Appellees do not dispute) that Uniswap is an unregistered broker, dealer, and exchange in violation of the Exchange Act. *See Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992). Moreover, since Uniswap's violations render every token transaction voidable as a matter of law, all contracts regarding such transactions fall under the scope of 29(b). Finally, the *EMA* court determined that EMA did not have to operate as an (unlicensed) broker-dealer for the applicable contracts to be completed. *See EMA Fin. v. Vystar Corp.*, 2020 U.S. Dist. LEXIS 252367 at *6-7 (S.D.N.Y. Mar. 29, 2020). In contrast, it is absurd to contemplate how Uniswap could lawfully contract with users engaged in securities transactions as an exchange, broker, or dealer without registering.

More fundamentally, while the overwhelming majority of case law concerning Section 29(b) involves unregistered <u>brokers</u>, the present case turns on the much rarer allegation that Uniswap is an unregistered securities <u>exchange</u>. The District Court dismissively compared the facts to holding Venmo liable for a drug deal, but a more accurate analogy would be if ***Venmo did not have the necessary legal authority to <u>even</u> <u>be</u> <u>operating</u> as a medium of financial exchange***, while also processing hundreds of millions of dollars' worth of transactions every day and knowing full well that many if not most of the transactions it hosted were fraudulent.

Thus the policy considerations here are much broader than a typical

unregistered broker-dealer 29(b) case. On a daily basis, tens of thousands of investors are exchanging hundreds of millions of dollars' worth of crypto assets on Uniswap, and if the Order is upheld these transactions will have little to no legal protection whatsoever. Already hundreds of millions have been lost to rampant, unchecked fraud, with the potential for greater losses ever looming. These are the circumstances that precipitated the 1929 stock market crash and the creation of the SEC. And in response the Appellants have adopted a "let them eat cake" stance, declaring that Uniswap "does a far better job" of protecting investors than the SEC, even as thousands lose millions.[3] Appellants' Section 29(b) claims must be upheld.

### C. Appellees' Arguments as to Contractual Privity are Improperly Factual or Unsupported by Case Law (or Both)

Appellants set forth in their main brief how the FAC alleged in detail a series of transaction-specific contracts between Uniswap and the investors who trade on it. These include the so-called "smart" contracts – the core contract, the router contracts, and the liquidity pools – as well as the contractual relationship formed by Users' use of the Uniswap Interface. The main brief and FAC also set forth how Appellees created these contracts, are parties to them, and derive fees and otherwise from them.

In response, Appellees make a series of largely-factual arguments, ignoring

---

[3] https://twitter.com/haydenzadams/status/1778126466984575166 (last accessed May 8, 2024).

the well-pleaded allegations in the FAC. First, Appellees recycle the tired argument that smart contracts are not contracts, an argument multiple courts (including even the District Court) have already rejected. *See, e.g.*, *Van Loon v. Dep't of Treasury*, 2023 U.S. Dist. LEXIS 144035 at *24-25 (W.D. Tex. Aug. 17, 2023). Second, Appellees completely ignore the allegations in the FAC and assert without any support whatsoever that none of the Appellees could possibly be parties to contracts which they drafted and from which they derive fees and other benefits (Appellees do not even address the router contracts and how they operate through "a Uniswap Labs server.") *See* Brief at 9 (citing A-237). Appellees further argue without any authority whatsoever that each transaction on Uniswap could not possibly be its own separate contract, and that the Appellants could not possibly have entered into contracts via their use of the Uniswap Interface despite allegations to the contrary. Indeed, Appellants acknowledge that users access the Uniswap Protocol through the Uniswap Interface hosted on the Company's servers.[4] *See* Company Brief at 12. Finally, Appellants continue to argue that they do not control Uniswap, despite their stranglehold on governance through their UNI ownership, studies showing their control, admissions by Appellants that they control the Uniswap Protocol, and other facts set forth in the FAC to the contrary.

---

[4] However, Appellees statement that only "some" users access Uniswap in this manner should be disregarded to the extent it contradicts the FAC.

8

All of these arguments put the cart before the horse in asking the Court to ignore well-pleaded allegations and instead accept Appellees' factual assertions as gospel. That is exactly the opposite of how a court is required to proceed on a motion to dismiss, and by extension how this Court should conduct its *de novo* review of the Order.

Moreover, these arguments are almost entirely unsupported by case law. Other than general citations for the appropriate legal standard, Appellees cite exactly two cases in support of their arguments against contractual privity. First, Appellees cite *Van Loon* – a case that held that "smart contracts are merely a code-enabled species of unilateral contracts" – for the proposition that this does not necessarily mean that all smart contracts are legal contracts. *Van Loon*, 2023 U.S. Dist. LEXIS 144035 at *24-25; *cf.* Company Brief at 25. Second, Appellees cite *Coinbase* for the proposition that "mere allegations that Plaintiffs engaged in 'losing transactions' are not sufficient to plead a 'contract that gives rise to rescission under Section 29,' in the absence of 'allegations regarding the date or material terms of any transaction-specific contract.'" Company Brief at 26 (quoting *Coinbase*, 2024 U.S. App. LEXIS 8200 at *11).

While Appellees' citation to *Van Loon* likely speaks for itself, *Coinbase* warrants further discussion. In *Coinbase*, the Court noted that the complaint "only included a variable fee schedule and stated generally that class members purchased

various tokens on 'one or more occasions,'" and held that the "repetitive, conclusory allegations that Plaintiffs had 'one or more losing transactions' in various tokens are insufficient" to plausibly allege a Section 29(b) claim. *See Coinbase*, 2024 U.S. App. LEXIS 8200 at *11-12. In contrast to the conclusory pleadings in *Coinbase*, the FAC includes hundreds of pages of allegations detailing the nature of the transaction-specific contracts and how Appellants were damaged. As set forth in the FAC, each time Uniswap's core and router contracts are used to execute a trade, the unique terms of that trade are written into them. *See* A-41-45 (¶¶ 78-87). For investors, each trade separately necessitates the determination of a new price for the tokens in any particular Uniswap Pool and the particulars of each relevant trade are written into Uniswap's smart contracts in order to determine said price. *See* A-31 ¶ 39, A-41 ¶ 78, A-45 ¶ 87. Unlike the *Coinbase* plaintiffs, Appellants identify exactly which of the alleged contracts are in operation for each trade (core, router, Uniswap Pool) and in what manner. *See* A-41-43 (¶¶ 78-81). The separate and distinct deployments of these contracts for each of Appellants' trades are clearly transaction-specific, in contrast to the generalized allegations in *Coinbase*. Any reasonable reading of the FAC would conclude that Appellants have adequately pleaded that each trade is a separate contract.

Indeed, the Second Circuit recently allowed a similar cause of action to proceed in *Binance*. Although that decision was largely concerned with issues of

timeliness, the Court nevertheless implicitly endorsed the plaintiffs' Section 29(b)

claims predicated on an allegation that Binance was an unregistered securities

exchange and alleging transaction-specific contracts:

> …[A] Section 29(b) claim must be predicated on an underlying
> violation of the Exchange Act. *And the two alleged violations of the*
> *Exchange Act underlying Plaintiffs' recission claims both require*
> *<u>transactions</u>. Plaintiffs allege Binance violated Section 5 of the*
> *Exchange Act by operating as an <u>unregistered</u> <u>exchange</u>* and Section
> 15(a)(1) of the Exchange Act by operating as an unregistered broker or
> dealer of securities.

*Binance*, 96 F.4th at 144 (internal citations omitted; emphasis added).

The contractual allegations in the FAC are substantially lengthier and more

detailed than the allegations upheld in *Binance*, detailing how Appellees wrote and

control the applicable contracts, are parties to them, and benefit directly and

indirectly from them. Indeed, the District Court even acknowledged that contracts

existed between Appellees and Appellants, but ignored them to focus on other

contracts which it concluded Appellees had not created (despite Appellees'

statements to the contrary!), a conclusion which in and of itself already represents at

least two reversible errors. To go further as Appellees urge would be to ignore all

of the allegations in the FAC regarding the contractual relationships between

Appellees and Appellants, and determine – at the pleadings stage – that no possible

contractual relationship could exist between them. This would be an even greater

error. Appellants' 29(b) allegations must be upheld and the Order must be reversed.

## II.   Appellants Sufficiently Allege a Cause of Action Under Section 12(a)(1) of the Securities Act

Section 12(a)(1) of the Securities Act imposes liability on a statutory seller, defined as either (1) the "owner who passed title, or other interest in the security, to the buyer," or (2) the one who "successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities' owner." *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988).

As set forth in Appellants' main brief, the FAC contains detailed factual support for the assertion that Appellees are statutory sellers under Section 12(a)(1). The FAC alleges that Appellees held and passed title of the applicable tokens through Uniswap's smart contracts and liquidity pools. *See* A-37 ¶ 64, A-41-48 (¶¶ 77-96). The FAC also alleges in detail how Appellees solicited transactions in the tokens and profited thereby. *See* A-25 ¶ 9, A-34-35 (¶¶ 52-53), A-46 ¶ 91, A-56 ¶ 125, A-57 ¶ 133, A-72 ¶ 198, A-175 ¶ 735. Finally, the FAC alleges how Appellees *issued their own token*, UNI, for purchase on Uniswap, which they own the majority of and which they have admitted gives them control over Uniswap. *See* A-55-59 (¶¶ 122-42). These allegations are more than sufficient to demonstrate seller liability under Section 12(a)(1). *See, e.g., Coinbase*, 2024 U.S. App. LEXIS 8200 at *10.

### A. Factual Arguments as to Whether Uniswap Held and Passed Title to the Tokens are Inappropriate

As an initial matter, the arguments as to whether as a matter of fact Uniswap

holds or passes title to the tokens are inappropriate in the context of a motion to dismiss, where the allegations in the FAC are to be taken as true and all inferences are to be drawn in Appellants' favor. And the FAC sufficiently alleges how Uniswap holds and passes title to the tokens, including liquidity tokens and UNI which Appellees undisputedly created and issued. Indeed, Uniswap has even stated publicly that its pair contracts "store[] liquidity providers' funds." A-192. These allegations and admissions cannot be disregarded on the say-so of a moving defendant.

Similarly, whether Uniswap was a "direct" seller of any applicable securities is also a factual issue, and at the very least Uniswap is clearly a direct seller of UNI and the liquidity tokens it "mints" and issues to liquidity providers, which Uniswap has acknowledged "are themselves tradeable assets [which] liquidity providers may sell, transfer, or otherwise use … in any way they see fit." *See* Appellants' Main Brief at 8-9; A-42 ¶ 79.

### B. Appellees' Attempts to Differentiate *Coinbase* Ignore the Pleadings and Reality

Appellees attempt to differentiate this Court's *Coinbase* holding on the grounds that Coinbase is a "centralized" exchange, while Uniswap is "decentralized." However, this distinction is meaningless for the purposes of the law, as despite its decentralized label it is clear how Uniswap holds and passes title to the tokens on its system. As set forth in the FAC, buyers and sellers do not trade

with each other directly – indeed, token issuers are anonymous, as intended and designed by Appellants when they created Uniswap – but do so only through the liquidity pools Uniswap creates and maintains, and only through the liquidity tokens Uniswap creates and issues. *See* A-41-43 (¶¶ 78-80). Uniswap holds both the buyer's funds as well as the newly-created tokens in what it calls "Uniswap Pools," and issues the liquidity tokens that make the trade occur. *See id.* Uniswap also "wraps" Ethereum tokens (changing ETH to WETH) when new tokens are issued or Ethereum is traded for ERC-20, a process that necessarily requires "holding" and processing the token. *See* A-43-44 (¶¶ 82-85). Finally, the FAC sets forth detailed allegations going to this very issue, discussing how the Uniswap Protocol is controlled as well as how so-called decentralized exchanges such as Uniswap are actually subject to centralized control – in this case, control by Appellees. *See* A-54-55 (¶¶ 117-21), A-59-61 (¶¶ 143-50). The mere characterization of Uniswap as a "decentralized" exchange does nothing to eliminate the reality of Appellees' possession, manipulation, and distribution of the tokens throughout the transactions.

Appellees' attempts to hide behind technology belie the simple facts at hand. Buyers and sellers of tokens connect through Uniswap, which holds and processes both the buyers' and sellers' assets throughout the transaction. Appellants issued and sold tokens on Uniswap in a manner that is not meaningfully different under the law from how traditional stocks are bought and sold on the New York Stock

Exchange, except for the very important difference that neither the tokens they sold nor the exchange on which the transactions occurred are registered as required under the Securities and Exchange Acts.

The FAC sets forth in detail how Appellees held and passed title to the applicable tokens, including UNI and the liquidity tokens Uniswap creates and issues directly to liquidity providers. Such allegations more than sufficiently meet the first prong of *Pinter*. Accordingly, Appellants' 12(a)(1) claim must be upheld.

### C. Appellants, at the Very Least, Directly Solicited Trades for UNI and the Liquidity Tokens

The second *Pinter* prong applies Section 12(a)(1) liability to sellers who successfully solicit the purchase of a security, "motivated at least in part" by the financial interests of themselves or the securities' owner. *Pinter*, 486 U.S. at 647. The FAC sets forth detailed allegations concerning the solicitation of tokens for purchase on Uniswap, including specifically solicitation by Appellees for the purchase of UNI, from which they benefit financially. *See* A-55-59 (¶¶ 122-42). The FAC also includes allegations concerning how Appellees (through the whitepapers and other promotions) solicited users to transact for liquidity tokens, which they benefited from in the form of transaction fees.[5] *See* A-42 ¶ 79 (liquidity

---

[5] Appellants have asserted that they did not originally implement the fee mechanism that was incorporated into the transaction contracts. However, since at least October 2023 Appellants have charged a 0.15% fee on most transactions on

tokens are themselves fully-tradeable assets), A-31, 37, 40, 46-47 (¶¶ 40, 63, 76, 91-96). Indeed, as of the filing of this brief it appears that Appellees make approximately ***$145,000 a day*** in transaction fees from their control of Uniswap.

Appellees nevertheless argue that Appellants have not alleged that Uniswap or its controllers ever directly solicited any specific token, somehow overlooking both the liquidity tokens necessary for the platform to function as well as UNI, the token Appellees issued, promoted, and sold on the platform. ***At the very least***, the solicitation allegations as to these tokens (which Appellees have never substantively disputed are securities) must be sufficient to support Appellants' 12(a)(1) claims under the second prong of *Pinter*.

Under either prong of *Pinter*, Appellants have sufficiently alleged that Appellees engaged in the unregistered sale of securities under Section 12(a)(1). Every token traded on Uniswap was held and processed on the platform. Uniswap created and issued liquidity tokens as part of these transactions. Appellees also created and issued UNI on the platform, and directly solicited the purchase of both UNI and the liquidity tokens by Uniswap users. All of these tokens have been accepted to be securities, and none of them were registered as required under the

---

the Uniswap Interface. *See* https://cointelegraph.com/news/uniswap-uni-dex-charge-0-15-swap-fees-beginning-oct-17 (last accessed May 8, 2024). These fees were subsequently increased to 0.25% following recent increased scrutiny by the SEC. *See* https://tokenpost.com/Uniswap-Hikes-Trading-Fees-To-025-Amid-SEC-Scrutiny-11538 (last accessed May 8, 2024).

Securities Act. As such, this cause of action must stand and the Order must be reversed.

### III. Should This Court Choose Not to Remand the Issue, the FAC Adequately Pleaded Control Person Liability Against the VC Appellees

The Order did not reach the merits of control person liability, and as such (and as Appellees acknowledge) the issue may be remanded to the District Court if this Court determines that underlying violations were properly pleaded under either or both of the Securities and Exchange Acts. Under such circumstances it is proper to remand the issue to the District Court for determination. *See, e.g., Schonfeld v. Hilliard*, 218 F.3d 164, 184 (2d Cir. 2000) ("Although we are empowered to affirm a district court's decision on a theory not considered below, ***it is our distinctly preferred practice to remand such issues for consideration*** by the district court in the first instance.") (emphasis added); *see also Beason v. United Techs. Corp.*, 337 F.3d 271, 274 (2d Cir. 2003) ("As a general rule, a federal appellate court does not consider an issue not passed upon below.")(internal quotations omitted).

However, should the Court deign to entertain the issue on appeal, the control person liability of the VC Appellees is adequately pleaded in the FAC.[6]

---

[6] Adams does not materially challenge the allegations of control person liability as against him. However, for the sake of completeness the FAC alleges that Adams has been the chief executive officer of Uniswap at all relevant times, and that he created, developed, and monetized the Uniswap Protocol and the Uniswap

To establish control person liability, a plaintiff must allege: 1) an underlying violation of the Exchange or Securities Act (discussed *supra*); and 2) control of the institution and/or conduct at issue. *See, e.g., In re Philip Services Corp. Securities Litigation*, 383 F. Supp. 2d 463, 485 (S.D.N.Y. 2004). The standard of control to be demonstrated "requires only ***the ability to direct the actions of the controlled person***, and not the active exercise thereof." *In re Veon Ltd. Securities Litigation*, 2018 U.S. Dist. LEXIS 148272, at *55 (S.D.N.Y. Aug. 30, 2018) (citations omitted; emphasis added).

As set forth in their main brief, the FAC sets forth in great detail how the VC Appellees control Uniswap along with Adams. *See* A-54-55 (¶¶ 117-21), A-59-61 (¶¶ 143-50). Adams and the VC Appellees control as much as 88 percent of UNI, and thereby essentially have total control over the Uniswap Protocol. *See* A-55-58 (¶¶ 122-34). Although the distribution of UNI among Adams and the VC Appellees cannot be fully determined prior to discovery, Andreessen at least holds enough UNI "to unilaterally propose changes to the Governance and vote affirmatively on such changes." A-59, ¶ 142.

In addition to their control of Uniswap's governance through UNI, the FAC also alleges in detail how the VC Appellees significantly contributed to the

---

Interface. *See* A-27, 34, 41, 47, 48 (¶¶ 21, 51, 52, 77, 96, 97). These allegations are sufficient to demonstrate Adams' control of Uniswap.

development and operations of Uniswap. *See* A-50-54 (¶¶104-16). These contributions include co-creating the Uniswap Protocol, writing the smart contracts on which this case turns, writing the whitepapers that solicited transactions on the exchange and purchase of UNI, and advocating against crypto regulation before the SEC and elsewhere. *See id.* Finally, the VC Appellees were the first and most important investors in Uniswap. *See* A-49, ¶¶ 99-100.

Taken as a whole, these allegations establish a level of control and involvement with Uniswap that goes far beyond Appellees' characterization of the VC Appellees as mere investors. The VC Appellees share control over Uniswap's governance, helped develop the Uniswap Protocol, and wrote smart contracts and whitepapers. They are heavily engaged in and have control over every aspect of Uniswap's operation. They control Uniswap. And as such, they are properly liable for the securities violations.

Moreover, such allegations should be sufficient where the specific details of the VC Appellees' control over Uniswap cannot be fully determined prior to discovery. Without access to Appellees' correspondence and other documents, Appellants cannot possibly yet know with precision how involved the VC Appellees are or were in the day to day operations of Uniswap, what decisions they made, whether their advice was followed or ignored, and so forth. It would serve little purpose from the perspective of judicial economy to let the VC Appellees out of this

case based on facts that cannot yet be fully determined, only to possibly have to bring them back in at a later date once those facts have been established.

## IV. The State Law Claims were Wrongly Dismissed and Should Be Remanded

Appellees all concede that Appellants' state law claims were wrongly dismissed, as the District Court had original jurisdiction over them pursuant to the Class Action Fairness Act. Despite this concession, the VC Appellees nevertheless urge this Court to dismiss the claims arising under the state securities laws of Idaho and North Carolina (the "State Securities Claims") with prejudice, on little grounds other than a representation that the State Securities Claims are purportedly interpreted similarly to the Securities and Exchange Acts.[7]

First, as with the substantive arguments concerning control person liability, such matters are properly remanded to the District Court. *See, e.g., Schonfeld*, 218 F.3d at 184; *Beason*, 337 F.3d at 274. The VC Appellees have not set forth any arguments as to why this Court should abandon its typical practice and resolve issues which have been only perfunctorily briefed without remand to the District Court.

Second, even if the Court deigns to consider this argument, the VC Appellees

---

[7] Adams and the Company concede that the State Securities Claims should be remanded. The VC Appellees argue that they should be dismissed by this Court, but do not argue that Appellants' remaining state law claims (aiding and abetting fraud, aiding and abetting negligent misrepresentation, and unjust enrichment) should be dismissed. UF argues that all claims against it should be dismissed including all state law claims.

have not convincingly demonstrated that the applicable standards for selling unregistered securities and operating an unregistered securities exchange under the laws of Idaho and North Carolina are sufficiently similar that determination of the 29(b) and 12(a)(1) causes of action necessarily determines the State Securities Claims. For Idaho, the VC Appellees cite a single case which cites *Pinter* while stating a general intent to maintain continuity with the Securities Act. *See Meyers v. Lott*, 133 Idaho 846, 849-50 (2000). For North Carolina, the VC Appellees cite a single case which merely expresses the sentiment that federal securities decisions are persuasive authority. *See Piazza v. Kirkbride*, 785 S.E.2d 695, 708 (N.C. Ct. App. 2016). Neither case touches on the state-law equivalents of the Exchange Act and Appellants' allegations that Uniswap operated as an unlicensed broker, dealer, and securities exchange. Nor did the VC Appellees otherwise make any effort to demonstrate how the law and relevant issues track completely between the State Securities Claims and the Securities and Exchange Acts.

There is no simply no coherent argument as to why this Court should dismiss the State Securities Claims with prejudice based on a representation that the laws are similar to the Securities and Exchange Acts and two perfunctory citations to semi-related state opinions. These claims should be remanded to the District Court for proper consideration.

## V.    The Claims Against UF Should Not Be Dismissed

Finally, UF argues that all claims against it – including all of the state law claims which were wrongly dismissed on jurisdictional grounds by the District Court – should be dismissed, on the grounds that Appellants did not sufficiently allege that it is an alter-ego of the Company.

As with the VC Appellees' arguments, these issues were not determined by the District Court, and as such they are properly remanded there.  *See, e.g., Schonfeld*, 218 F.3d at 184; *Beason*, 337 F.3d at 274.  UF has not set forth any arguments as to why this Court should abandon its typical practice and determine these issues without remand to the District Court.

Should the Court deign to consider these arguments, Appellants have sufficiently pleaded the basis of UF's alter-ego liability under applicable law.

First, it is not at all certain that Delaware law governs the analysis of the alter-ego allegations.  Courts have held that federal common law governs "when a federal interest is implicated by the decision of whether to pierce the corporate veil."  *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 275 n.11 (2d Cir. 2023) (quoting *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 848 (6th Cir. 2017)).  Under a statutory regime such as the securities law, there is a recognized interest in maintaining a "national uniformity" requiring the fashioning of a body of federal common law.  *Monarch Long Beach Corp. v. Soft Drink Workers, Loc. 812*, 762

F.2d 228, 231 (2d Cir. 1985). "If a claim involves a federal statute and that statute demands national uniformity, then the federal common law of veil piercing applies." *Garcia v. Vill. Red Rest. Corp.*, 2017 U.S. Dist. LEXIS 69965 at *17-18 (S.D.N.Y. May 8, 2017) (citing *U.S. v. Peters*, 732 F.3d 93, 103 n.4 (2d Cir. 2013)).

As for Appellants' state law claims, "A federal court ... adjudicating state law claims that are [supplemental] to a federal claim must apply the choice of law rules of the forum state," which here is New York. *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989). Under New York's choice-of-law rules, "the first step ... is to determine whether an actual conflict exists between the laws of the jurisdictions involved." *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012). Where no conflict exists, New York law applies. *See Wall v. CSX Transp., Inc.*, 471 F.3d 410, 422-23 (2d Cir. 2006).

The jurisdictions potentially interested in Appellants' state law claims include New York (the forum state), Delaware (where the companies are incorporated), and arguably Idaho and North Carolina (whose state laws are at issue). At least one court has held that the alter-ego tests under New York and Delaware law are "substantially similar," in which case between the two New York law should apply to these claims. *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 430 & n.16 (S.D.N.Y. 2010) (collecting cases). While there does not appear to be an explicit holding regarding conflicts between the alter-ego tests of New York and Idaho or North

23

Carolina, those states have the least interest in the determination, and in any event no party to this appeal is arguing that their laws should apply.

So for the claims arising under the Securities and Exchange Act, the federal common law "generally gives less deference to the corporate form than does the strict alter ego doctrine of state law." *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1220 (2d Cir. 1987). To determine whether alter-ego liability exists, federal common law considers several factors, including: "(1) the intermingling of corporate and personal funds, (2) undercapitalization of the corporation, and (3) failure to maintain separate books and records or other formal legal requirements for the corporation." *Williamson v. Recovery L.P.*, 542 F.3d 43, 53 (2d Cir. 2008) (quoting *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989)). There is no set rule as to how many of these factors must be present to warrant piercing the corporate veil and courts have considered additional factors as well. *Williamson*, 542 F.3d at 53. "Instead of a firm rule, the general principle guiding courts in determining whether to pierce the corporate veil 'has been that liability is imposed when doing so would achieve an equitable result.'" *Id.* (quoting *Wrigley*, 890 F.2d at 601).

As for the claims arising under state law, New York law provides for piercing the veil "when the corporation has been so dominated by an individual ... and its separate entity so disregarded, that it primarily transacted the dominator's business

rather than its own and can be called the other's alter ego." *Wrigley*, 890 F.2d at 600. Factors to be considered under New York law include: (1) "the absence of the formalities and paraphernalia that are part and parcel of the corporate existence" (2) "inadequate capitalization," (3) "overlap in ownership, officers, directors, and personnel," (4) "common office space, address and telephone numbers of corporate entities," (5) "the amount of business discretion displayed by the allegedly dominated corporation," and (6) "whether the related corporations deal with the dominated corporation at arms length." *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991). "Given the breadth of factors that inform the decision, the Second Circuit has emphasized that the determination of whether to pierce the corporate veil is a fact specific inquiry." *Network Enters. v. APBA Offshore Prods.*, 2002 U.S. Dist. LEXIS 17256 at *9 (S.D.N.Y. Sep. 10, 2002) (quoting *MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001)). Moreover, "[t]he court of appeals has cautioned that applying these factors 'to the infinite variety of situations that might warrant disregarding the corporate form is not an easy task because disregarding corporate separateness is a remedy that differs with the circumstances of each case.'" *Id.* (quoting *Passalacqua*, 933 F.2d at 139). Importantly (and as with the federal common law), an alter ego claim in New York "need not be based upon fraud." *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361, 375 (S.D.N.Y.

1997).

Under either the federal or New York rubric, the allegations set forth in the FAC establish a plausible basis for UF's alter-ego liability. *See* A-62-65 (¶¶ 158-68). *Inter alia*, the FAC establishes that the other Appellees created and set up UF, transferred assets between Uniswap and UF, and run UF through officers and board members who were previously executives at the Company. These allegations incorporate several of the federal and New York alter-ego factors, including commingling of funds, overlap in officers and directors, and failure to deal at arm's length with each other. As such, they are sufficient to meet the minimal requirements to survive a motion to dismiss.

## CONCLUSION

For the reasons stated herein, Lead Plaintiffs-Appellants respectfully request that the District Court's decision be reversed and the case remanded.

Dated: May 10, 2024
New York, New York

KIM & SERRITELLA LLP

By:   /s/ James R. Serritella
James R. Serritella
Justin Stone
110 W. 40th Street, 10th Floor
New York, NY 10018
212-960-8345
jserritella@kandslaw.com
jstone@kandslaw.com

26

## **CERTIFICATE OF COMPLIANCE**

The Undersigned counsel for Lead Plaintiffs-Appellants certifies pursuant to Federal Rule of Appellate Procedure 32(g) that this reply brief:

1.      Complies with the type-volume limitation set forth in the Order of the Court dated April 23, 2024 because it contains 6,260 words, including footnotes and excluding the parts of the brief exempted by Federal Rules of Appellate Procedure 32(f); and

2.      Complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in 14-point Times New Roman

Dated: May 10, 2024                                        /s/ James R. Serritella